UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARY MACAULAY, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00476-SRC |
| | ) | |
| ST. LOUIS BOA PLAZA, LLC, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## Memorandum and Order

In this case, previously removed based on diversity of citizenship, Missourian Mary Macaulay seeks leave to amend her complaint and bring direct claims against Missouri corporation and third-party Defendant Hughes Customat, Inc.  While the current Defendants have no objection, Hughes opposes Macaulay's motion, arguing both that granting the motion would prejudice it and that 28 U.S.C. § 1367(b) prevents joinder.  The Court rejects these arguments—concluding that justice requires granting Macaulay leave to amend and that section 1367(b) does not apply—and thus grants Macaulay's motion.  Because joinder of Hughes destroys the parties' complete diversity of citizenship, the Court remands the case to the state court.

## I.    Background

Macaulay, a Missouri resident, says she fell and seriously injured her hip after tripping on a rug immediately after passing through the revolving door at an office building.  Doc. 4 at ¶¶ 7, 8.  In Missouri state court, she sued the owner of the building, St. Louis BOA Plaza, LLC, a limited liability company whose membership consists entirely of California citizens, and the building manager, Jones Lang LaSalle Americas, Inc., a Maryland corporation with its principal

place of business in Illinois.  Docs. 1, 4.  BOA Plaza and LaSalle removed the case, Doc. 1, and later jointly filed a third-party complaint against Hughes Customat, Inc., Doc. 17, a Missouri corporation according to the Missouri Secretary of State's public records; the Defendants allege, among other things, that Hughes created the dangerous condition that caused Macaulay's injuries because the Defendants had contracted Hughes to "provide and cut, place, clean, and service all floor mats" at the office building, Doc. 18 at ¶¶ 5, 10, 13; *see* Doc. 18-1.

A few months later—and after the deadline for joinder of parties and amendment of pleadings had passed—Macaulay moved to dismiss her own case without prejudice because her lawyer intended to retire from the practice of law for medical reasons.  Docs. 29, 29-1. Defendants, and Hughes, opposed this motion, arguing in part that Macaulay sought dismissal to avoid federal court, so the Court held a hearing.  Docs. 32, 33.  At the hearing, Macaulay indicated that, her pending motion to dismiss aside, she intended to amend her complaint to name Hughes as a defendant, so this Court would lack subject matter jurisdiction, resulting in remand.  The parties disagreed whether the law allowed Macaulay to join Hughes as a defendant, so the Court ordered the parties to confer and determine how to proceed.  After discussion, the parties agreed that Macaulay would seek leave to both amend her complaint and add Hughes as a defendant.  Doc. 35.  The Court agreed with this approach and denied without prejudice Macaulay's then-pending motion to dismiss.  Docs. 36, 39.

Macaulay now moves to amend her complaint and join Hughes as a defendant.  Docs. 37, 38.  In her proposed amended complaint, Macaulay intends to bring premises-liability and negligence claims against Hughes arising from her trip-and-fall.  Doc. 37-1.  BOA Plaza and LaSalle consent to the proposed amendment and joinder, Doc. 40, while Hughes objects, arguing that joinder would prejudice it and that 28 U.S.C. § 1367(b) prevents Macaulay from joining a

nondiverse party previously joined as a third-party defendant, Doc. 41.  The Court now addresses the motion for leave to amend and the resulting impact on the Court's subject-matter jurisdiction.

## II.      Standard

The Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2).  Under Rule 20, the permissive-joinder rule, "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  But in a case previously removed on the basis of diversity, the Court must scrutinize a plaintiff's proposed amendment that joins a new, nondiverse defendant.  "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).

To determine whether to permit a joinder that would destroy subject-matter jurisdiction, the Court must "consider 1) the extent to which the joinder of the nondiverse party is sought to defeat federal jurisdiction, 2) whether [the] plaintiff has been dilatory in asking for amendment, and 3) whether [the] plaintiff will be significantly injured if amendment is not allowed."  *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 309 (8th Cir. 2009) (quoting *Le Duc v. Bujake*, 777 F. Supp. 10, 12 (E.D. Mo. 1991)) (alterations in original).  However, the Court has no choice but to permit joinder and remand if the plaintiff seeks to add an *indispensable* defendant whose joinder would destroy jurisdiction.  *Bailey*, 563 F.3d at 308.  The Court conducts a multi-step inquiry under Rule 19 when determining a party's indispensability, but the basic test is whether a party's

"absence would render a judgment infirm, defective, or unfairly prejudicial in some fashion." *Spirit Lake Tribe v. N. Dakota*, 262 F.3d 732, 746 (8th Cir. 2001); Fed. R. Civ. P. 19.

## III.    Analysis

While Macaulay claims Hughes is an indispensable defendant, the Court need not determine the indispensability of Hughes under Rule 19, because, even considering only the permissive-joinder requirements of Rule 20 and the factors governing the permissive joinder of diversity-destroying parties set out in *Bailey*, the Court concludes that it should grant Macaulay leave to amend and join Hughes as a defendant.  As to the requirements of Rule 20, no dispute exists that Macaulay's proposed premises-liability and negligence claims against Hughes, along with Macaulay's current claims against BOA Plaza and LaSalle, arise out of the same transaction or occurrence—the circumstances surrounding Macaulay's injurious fall—and thus involve common questions of law or fact.  *See* Doc. 18 at ¶ 13 (BOA Plaza and LaSalle's third-party complaint alleging that Macaulay's claims against Defendants "arise out of or relate to Hughes' performance or failure to perform under the Service Contractor Agreement. . .").

Addressing the *Bailey* factors, Hughes claims Macaulay seeks "specifically to avoid federal court jurisdiction," that she "had ample time to seek leave to add Hughes Customat prior to the [Court's] deadline," and that joinder resulting in remand would prejudice Hughes as it would "allow Plaintiff the opportunity to circumvent the deadlines set forth in the Case Management Order to her advantage, specifically to avoid federal court jurisdiction."  Doc. 41 at p. 3.

Considering the *Bailey* factors, the Court finds that good reasons exist to grant Macaulay leave to amend and add Hughes as a defendant.  First, Macaulay did not learn of Hughes's potential liability in this case until after the Defendants had removed the case to this Court.  At

the hearing on Macaulay's motion to dismiss, the Defendants represented to the Court that Macaulay would not have been aware of their service agreement with Hughes until they made their initial disclosures on September 30, 2021.  The contract apparently requires Hughes to "[p]rovide clean mats and remove soiled mats on a weekly basis at Bank of America Plaza," Doc. 18-1 at p. 9, and Macaulay claims she tripped and fell on one of the door mats serviced by Hughes, Doc. 37-1 at pp. 10–14.  The Court does not hesitate to draw the conclusion that, had Macaulay known at the time she initially filed her state court lawsuit of Hughes's involvement and the contract between the Defendants and Hughes, she would have sued Hughes at that time. *See Rowland v. Edlund Co.*, 4:20-cv-400, 2020 WL 8455123, at *2 (W.D. Mo. Oct. 23, 2020) ("These circumstances suggest [Plaintiff's] joinder . . . is not intended to defeat diversity, but rather for [Plaintiff] to litigate each claim related to the alleged injury in the lawsuit.").

Moreover, while Macaulay seeks leave to amend her complaint after the passing of the Court's deadline for doing so, that fact makes her tardy, not necessarily dilatory.  Although Defendants indicate that they served Macaulay with initial disclosures, including their contract with Hughes, on September 30, 2021, Doc. 40 at p. 2, considering the circumstances, the Court finds that Macaulay has not intended to delay the proceedings with her motion.  The Court bases this finding on the representations of Macaulay's counsel regarding his health issues and how those have affected his legal practice.  At the hearing on Macaulay's motion to dismiss, counsel stated that he suffers from worsening heart problems and intends imminently to retire from the practice of law.  He frankly admitted that he had not given Macaulay's case the attention it deserved and that he did not begin to work seriously on the case until the Court ordered mediation on November 30, 2021.  Believing a new lawyer should take the case, counsel filed a motion to dismiss the case without prejudice a few weeks later, on January 14, 2022.

5

The Court always expects the attorneys who appear before it to practice law to the best of their "knowledge and ability," Mo. Sup. Ct. R. 8.15, but the Court takes counsel at his word that his illness and the wind-up of his legal practice caused him to miss the case-management-order deadlines for joinder of parties and amendment of pleadings.  In concluding that Macaulay lacks dilatory intent, the Court also considers that the parties have not engaged in substantial discovery, and have engaged in only extremely limited motion practice in this Court.  For example, at the time Macaulay filed her motion, the Defendants had not yet had to answer any discovery outside of Rule 26 initial disclosures.  *See* Doc. 41 at p. 3.

Further, Macaulay would suffer if the Court denied her motion because denial would force her to maintain a separate suit against Hughes in state court.  *See Rowland*, 2020 WL 8455123, at *2.  Similarly, permitting Macaulay to litigate this matter in one suit promotes judicial economy.  *Id.*  Conversely, Hughes would suffer no prejudice if the Court granted Macaulay's motion.  Hughes says that allowing "Plaintiff the opportunity to circumvent the deadlines set forth in the Case Management Order to her advantage, specifically to avoid federal court jurisdiction," constitutes prejudice.  Doc. 41 at p. 3.  But the *Bailey* inquiry focuses not on "prejudice" alone but on "undue prejudice."  *Bailey*, 563 F.3d at 307 (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994)).  As the Court previously noted, Macaulay's new claims indicate not a desire to skirt the Court's Case Management Order or play jurisdictional games, but a desire to litigate all claims related to Macaulay's alleged injury at once.  The Court thus finds no undue prejudice to Hughes and, considering the *Bailey* factors, grants Macaulay leave to amend her complaint.

Hughes also argues that, because 28 U.S.C. § 1367(b) apparently divests the Court of any supplemental jurisdiction over Macaulay's proposed claim, the statute somehow requires the

Court to deny Macaulay's motion for leave to amend her complaint.  Doc. 41 at pp. 4–6.  This argument misconstrues section 1367(b) and lacks merit.  The statute provides that, in diversity cases, district courts lack supplemental jurisdiction "over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure . . . when exercising supplemental jurisdiction over such claims" would defeat diversity.  § 1367(b).  Thus, section 1367(b) governs the Court's supplemental jurisdiction, but says nothing about whether the Court can—or should—grant leave to amend a complaint.  Because Macaulay's motion for leave does not itself raise any supplemental-jurisdiction issues, section 1367(b) simply does not apply.

Moreover, by explicitly divesting the Court of supplemental jurisdiction over claims by plaintiffs against diversity-destroying counter-defendants, section 1367(b) only buttresses the Court's conclusion that it must remand the case.  Because Hughes's joinder destroys complete diversity and section 1367(b) forecloses supplemental jurisdiction as an alternative, Hughes's joinder "destroy[s] subject matter jurisdiction," and the Court must "remand the action to the State court."  28 U.S.C. § 1447(e); *see Carolina Asphalt Paving, Inc. v. Balfour Beatty Const., Inc.*, 225 F.R.D. 522, 525–26 (D.S.C. 2004) (granting plaintiff leave to amend its complaint to name a nondiverse party and remanding the case to state court because section 1367(b) divested the court of subject-matter jurisdiction).

## IV.    Conclusion

Considering the *Bailey* factors, justice requires joinder of Hughes as a defendant, and the Court grants Macaulay's [37] motion for leave to amend her complaint.  Because 28 U.S.C. § 1447(e) requires the Court to "remand the action to state court" once it "permit[s] joinder" of "additional defendants whose joinder would destroy subject matter jurisdiction," the Court

remands this case to the state court, and, pursuant to 28 U.S.C. § 1447(c), orders the Clerk of Court to mail a certified copy of this order of remand to the clerk of that court.

So Ordered this 15th day of March 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE